Good morning, your honors. My name is Marjorie Gentry, and I represent the plaintiff appellant, Tony Penwell. I'd like to try to reserve two minutes for rebuttal. We'll see if that manages to happen. So the issue today is whether or not Mr. Penwell's 15-month, almost 15-month confinement in administrative segregation as a result of an order by the court restricting his access to contact with people other than his defense attorney violated his constitutional rights. The issue is whether it constituted punishment, which would violate due process rights, or whether improperly infringed on his First Amendment rights. In making the – when the court ruled below, the court applied two legal standards which we believe were in error, and the court below dismissed his action on the summary judgment. The first error in the court – in the magistrate's decision, which was adopted by the district court, was the magistrate's belief that in determining whether or not the conditions of Mr. Penwell's pretrial detention constituted punishment, the sole question before it was to try to determine whether or not there was a legitimate purpose advanced for placing Mr. Penwell in administrative segregation. He wasn't in pretrial detention the whole time, was he? He was in pretrial detention for 15 months. After that, he received his first conviction, and then he remained in administrative segregation, and he remains there until today. And as I understand it, the judge really didn't just say that the sole question – I mean, I appreciate – I read his opinion, and there is something there about the sole question, but he does talk about two different concerns, doesn't he? In other words, the restriction was reasonably related to the government objective, and were the restrictions excessive? He does talk about the excessive, right? You're just suggesting he didn't do anything more than say it? Isn't that what you're saying? Exactly. Although in the introduction to his analysis, it is clear that he understands and he does cite Bell v. Wolfish as well as several other authorities, and when it came to doing the actual analysis, after concluding that there was a legitimate government purpose for placing Mr. Penwell in administrative segregation, there was no further analysis. There was no consideration of the fact that Mr. Penwell's conditions of his confinement while in administrative segregation were not the same necessarily as others that were in administrative segregation. Well, he did discuss excessiveness, did he not? Cited to Demery v. Arpaio? Although he did cite the cases, he did not apply them to any of the facts presented to him in the summary judgment motion. Well, in effect, as I understood it, the prisoner was in jail, and the jail just kept getting these orders from the district court which said, we want this, we want that, we want the other, and then when they got the last order, there was really no place in the jail they could abide by the last order other than administrative segregation. Isn't that true? It depends on what level of responsibility you feel the court had, the prison system had to restrict Mr. Penwell. Well, but just a minute. I appreciate you answering my question. Is there any other way in that prison that they could have done what the district court told them to do except in that segregation? No, Your Honor. So if there was no other way, and I guess I'm kind of worried about this a little bit because I was a DJ and you don't even know where Mallad, Idaho is, but there's an old jail in Mallad, Idaho, and there's only one way to deal with my orders, and they have to deal with them, and if, in fact, there's no other way to deal with them in that area, what can one say about excessive? Your Honor, I believe part of where the excessiveness comes in is the fact that there's not, within the administrative segregation section of this jail, there's not uniform standards applied to every single prisoner that is in there. Certain prisoners who are in there, have been placed there because of bad behavior, are given many more freedoms as they move towards reentry to the general public. Well, but we're talking about the freedom to take away his privileges to the telephone, in effect. We're really trying to keep him from contacting certain people. In order to keep him from contacting certain people, that's the only place they can go, and as I understand, the district court said, given the bail analysis, the prison had to put the defendant there to enforce the telephone use. The need for the restrictions there were justified. The need for uniform enforcement was justified, and that there's no evidence otherwise in this record. Your Honor, there is some evidence in the record of the fact that different segments of the population housed in administrative segregation were given different privileges. There are some prisoners who are housed there that are allowed to go out of their cells for more than one hour at a time and isolate by themselves. Certain groups of prisoners are allowed to go out for four or five or six hours and do so in a group. So the isolation that Mr. Penwell experienced would have been greatly diminished. The record also shows that they could have, that the jail administrators can shut off the phone system in the common room, which is what I believe they do during Mr. Penwell's time outside the cell. There's no reason why Mr. Penwell cannot be permitted to exit his cell with other individuals who are also placed in administrative segregation. Let me ask you this. What relief do you ask, and what remedy would you have us grant? The remedy that my client is seeking is an injunction to require the prison system to allow him to have greater freedoms while in administrative segregation. This is prospective. Pardon? This is prospective. Prospective. But hasn't he been convicted now? Yes, he has been convicted. So then what's the use of the prospective? As a matter, because this practice continues to occur, if it's in violation of the Constitution, there should be prospective relief granted. It's not a class action, is it? No, it is not a class action. He's not trying to seek prospective relief that would affect other prisoners kept in pretrial detention, is he? No, he is not. Isn't he after damage? He is after damages as well. And are we therefore here the injunctive relief mainly gone? Yes and no, Your Honor. Because he is still in administrative segregation, if prospective relief was granted and it would be possible for him to achieve greater. That's not really in front of us, is it? No, Your Honor, it is not. What's the length of the sentence? He has one sentence that is, I believe, 30 years, and I'm not sure of what the length of his other sentence is. And as far as you know, is he going to be kept in the same facility? I believe so. Based on my understanding, he's... This is a prison in addition to being a place for pretrial detainees? Yes, it is, Your Honor. Has he made a claim that he's now improperly classified? He does continue to assert the fact that he is improperly classified because he remains in administrative segregation. Has he sought relief through the prison administrative system? Yes, he has continued to, at his monthly review hearings, to raise the issue of the proprietary, about whether or not he should be retained. Whether or not he should stay in administrative segregation. But that's not this case, right? No. And that's why I asked the question, because I think you raised some troubling aspects. I mean, to be sure, it doesn't seem to me that to continue in administrative segregation is necessarily appropriate given the circumstances of the conviction and the terms of his confinement. But I just didn't see what relief we could grant in that regard. I guess maybe you ought to, if you've got 36 seconds, tell us what we ought to do on the religious doctrine. Under the court below decided the issue of free exercise under Freeman. Since the court issued its opinion, this court issued its opinion in Shakur, which changed the requirements placed on establishing a free exercise violation from those of whether or not it was a central tenet to the religious beliefs to whether or not it's a sincerely held belief. Under Harper v. Virginia, we believe that that should be applied retroactively. Why does Harper v. Virginia Department of Taxation apply to this case? Since Freeman was a Ninth Circuit rule and Shakur is a Ninth Circuit rule, it seems to me that Harper only deals with Supreme Court rules. Although there's no citable opinions, this court has held in several unpublished opinions, has applied Harper to Ninth Circuit rules that are in it. That's not binding on us, right? No, it's not binding, but I believe it is persuasive authority. And I also believe the reasoning in Harper is sound because the concern of unequal application of new laws is equally present here, whether or not it's the Supreme Court or the Ninth Circuit that announces the new rule. Thank you, ma'am. You took this case pro bono. Yes, I did. Thank you. Good morning, Your Honors. May it please the Court, Counsel? My name is Nancy Balin. I represent King County and the named defendant, Reed Holgerts, and the other named defendants behind Mr. Holgerts. And, Your Honor, the most important thing to draw out of the Bell v. Wolfish case as regards to this case is that there is a difference between a test and a guidepost. And, in fact, in this case, the U.S. District Court did consider the Bell v. Wolfish test and found that the disability or the restrictions purpose, in other words, the purpose of administrative segregation has to be not for the purpose of punishment but because of some other legitimate governmental purpose, which, of course, as Judge Smith repeatedly enunciated, was to keep Mr. Penwell off the phone except to his lawyer. Does the record tell us? Are there records all over this prison and the only place where there isn't a phone is in administrative segregation? Are there records all over the prison? Records about telephones all over the prison. Any orders, court orders? No. Anything in the record that tells us, in our record, that tells us whether there are telephones all over the prison that he would have access to but for administrative segregation. The record Because it does seem a bit extreme to order that somebody not be allowed to place telephone calls so you slap them in administrative segregation. To me, there was a disconnect there. I understand that, Your Honor. And what's important to also differentiate here is that this case is with regards to the King County Jail, five blocks down the street. Mr. Penwell is not in jail anymore. He's in prison. Right. And so whatever he's doing now, as far as his classification, is not before this court. Is he an admin seg now? Pardon me? Is he an admin seg now? I don't know, Your Honor. I haven't contacted the Department of Corrections to find out. As far as you know, he's no longer in the facility at issue in the case. That's right. He's been moved to a regular correctional facility. A prison. And as far as the State knows, serving out a sentence placed through the routine classification system and treated as any other person with his kind of record and conviction would be treated. As a State prisoner, yes. And I don't know how the State system classifies. I've never represented DOC. But in our jail, as the court can see from the 46 administrative segregation reviews Mr. Penwell has, an inmate's security status, housing location is reviewed, especially when they're an ad seg, as we call it, monthly, over and over and over and over and over, 46 times in Mr. Penwell's case, while we had him. In the State system, as is similar to us, what I know about that is it's based on same classification factors as ours. The charges you're facing, the sentence you may be facing, your behavior in the jail. And in this case, we have. Are those issues before us? His classification status? It's happening to him now. No. No, it's not. But I wanted to make clear that Mr. Penwell is not still in our jail and hasn't been for quite some time. The primary purpose of the orders that came from the court before he was convicted was to keep him from using the telephone to, what, contact witnesses or the victim or whatever? He was harassing and tampering with witnesses. The prosecutor came back. First, there was a no contact order, which is very routine in either sex cases or domestic violence cases, where, okay, you're in court, these people are victims and witnesses, you can't call them. That happens routinely in the prosecutor's office. What happened after that is Judge Trickey issued three separate orders telling him not to be able to call these people that he'd already been told not to call. The whole fulcrum, the whole focus of the issue was his use of the telephone to reach the outside world. And the mail. Was he in any danger from other inmates? Not that I have seen in the record. Were any of his co-conspirators or friends or colleagues in the same facility? That's not clear from the record. That's very possible, but I don't know. Your opponent has suggested that King County Jail has the capacity to turn off all telephones when inmates such as Mr. Penwell are outside their cell. Is that correct? In some units. The record is not clear as to exactly where he was. Are there units where he could have been placed and denied access to the telephone without the other restrictions of Admin SIG? No. No. The system, the easy part of the system, an easy court order to follow as far as these surroundings would have been if the court had said, here's 15 numbers you cannot call anymore. What we can do in the jail is block specific phone numbers. What we can't do is block specific people. That's really where we are. And so that's why the phone block read that the only calls he can make, the entire universe of people could not be called because he couldn't be trusted not to call those five or six people. So he was only allowed to call his lawyer. The only way to do that is for the unit, the classification staff or the officer on the unit, to actually dial a phone and hand it to him to use so that they knew they were calling the lawyer and they knew that he wasn't calling a person so that that person could conference in the victim or the witness, which happens, that's three-way calling, that happens all the time. I still have this question. Are you saying then that the only place where there is not a freewheeling access to telephones in this jail is when somebody is in administrative segregation? Yes, that is the only place where a phone block can be enforced, effectuated. Yes. And under the Turner v. Safley factors, sure, it's possible. This is a 20-year-old jail. It's important to also have the court take judicial notice. If this were a conditions case, it seemed to me that those are certainly pretty antiquated conditions. Well, actually, Your Honor. Even in the circumstance that Judge Smith notes, I mean, even in a county jail, I mean, it seemed to me that you could disconnect the telephone. If only it were that easy, Your Honor, we wouldn't be here, and it would be easier for the jail as well. It's not a possibility with the phone system. The phone system has been updated to allow inmates to have PIN numbers, to buy little essentially debit cards at commissary. We're talking about e-mail, eventually being able to have that. And we're still, as I tell my clients all the time, we're dragging into the 21st century as fast as we can, but we're not as quick on our feet as we wish we could be. The fact is also, though, that brings up an interesting point, Your Honor, Judge Lucero, because in the record, actually on page 296, not 295, that's where those grids are, which I'll show the Court, just for the record. Mr. Penwell cited to page 295. That grid actually came into play after this case, so it's 296. And the Court will see that there are seven different categories of inmates who are in ADSEG, most of them behavioral, some of them for protective custody, because that's also the only place we can really protect them, and some, as it says here, that are not for behavior or disciplinary. That's what we now call legal. Those are phone locks. And what you'll notice is if you look at the two or three dozen different privileges, that they differ from inmate to inmate. You can see that the inmates that are there for behavioral reasons have way fewer privileges. Many of the privileges that Mr. Penwell had, it says same as GP, same as GP. That's general population. And as Mr. O'Farrell and the other classification staff told him over and over, if you could get the court to rescind the court order, you'd be in GP. And that never happened. And, in fact, Mr. Penwell didn't ask to be removed from administrative segregation. It seems to me imposing an impossible condition. You can't say to a prisoner, well, we'll take you out of administrative segregation if you get the trial judge to change the order. That's effectively saying is that we're not going to give you any relief at all. Well, not necessarily, Your Honor. I mean, Mr. Penwell suggests in his brief that nobody asked if he would comply with the court order. So somehow that means that the lack of ability to use the phone was excessive because nobody said, well, if we say not to, why are you not going to? Well, the fact is he already had a no contact order and three later orders. No, he wasn't going to comply. And that doesn't make the lack of phone use excessive. Shall I address? I guess, yes, I would like to turn to the last issue. The religion issue? Yes. Good. Give us, you only got a minute 30 or so. I thought you at least had to give us a little bit on that. Well, I appreciate that, Judge. Why couldn't the priest, the reverend, go right into the prison cell with him for confession? Well, there was a room where he could have individual sessions with the, if he was Catholic it would have been a priest, I assume, or whatever chaplain. He was able to use that private room and they were able to. The allegation is that he had to do it across the bars. Well, he says that in some places and in other places. In the record, he actually acknowledges that there was a room where he could have private visits. And I believe that Mr. Kirkham's declaration also mentioned the private room. So, yes, he was able to have a private room. And what about going with others to a group prayer session? That's what we can't do in administrative segregation because if the court will remember that. Is there a telephone in the chapel as well or wherever they go? No, I mean, this must be, these telephones are ubiquitous in the Kane County jail. Well, they are everywhere because we have 1,400 inmates just in Seattle and they all need to be able to call their lawyer. And they, yes, I have forgotten your previous question that I was going to answer. Oh, no, it's not the phone issue. It is, many of these inmates do have very high security classifications. Either they're ultra security because they have their capital cases or they're three strikers as we call them. And to put all of those people in a room, even when some of them are not dangerous like Mr. Penwell, would have such a staffing impact. It can't be done. It's not safe for them. So nobody, there is no such thing as a prayer session or a mass or some kind of a religious free exercise room, so to speak. Not for groups in ADSEG, but there are religious tokens. There are religious books. There is a chaplain. There are prayer shawls. There are people that need to wear turbans. But no group sessions? No, not in ADSEG. For anyone? For where? For anyone. Not in ADSEG. All right. Well, wait a second. Wait a second. For the general population, there is such a place where there are no telephones? Are we talking about religious services? Yes. Yeah, the telephone isn't an issue with the service. It's the security of all the inmates who are grouped together. Yes, there are inmates with more minimal security classifications are able to meet in groups. They go out of their cells in groups. I don't know about your time, but my time is up. Yes, that was mine. Thank you, Your Honor. Okay. Thank you. And Judge Hawkins stole my thunder, but I especially wanted to thank you, Ms. Gentry, for taking on this pro bono project. We really appreciate that kind of work in our circuit, and we appreciate both your arguments. Thank you very much. Case 0735638 is submitted.
judges: Lucero, Hawkins, Smith N. R.